Statement of the Case.
MONROE, J.
Plaintiff has appealed from a judgment rejecting its demand for damages, alleged to have been sustained by reason of defendant’s nonexeeution of a contract which is set out in the petition as follows;
“That, on or about the 25th day of September, 1909, the said Vordenbaumen Lumber Company, Limited, acting through its duly authorized agent and manager, O. B. Hopkins, and your petitioner, acting through its duly authorized agent and manager, executed and signed a document, a copy of which is hereto attached as Exhibit A, and which is as follows, to wit:
“ ‘Lake Charles, La., Sept. 25, 1909.
“ ‘Kelly Weber & Go., Ltd., Lake Charles, La.
“ ‘Gentlemen: In accordance with agreement with your Mr. W. P. Weber, we hereby agree to furnish 100,000 bushels of No. 3, and better, shelled corn, at the price of 58 cents (fifty-eight cents) per bushel, of 56 pounds, f. o. b., La Fayette. Delivery to begin as soon as possible after present contract is completed; all to be delivered before January 1, 1910. It is further agreed that, if we are unable to secure enough corn to fill this contract at La Fayette, Scott, Parks, St. Martinville, Cade, Sunset, Breaux Bridge, or any intermediate points, you are to allow us one cent per bushel extra for the unfilled portion of this contract that we have to buy from the adjoining territory, as an extra compensation for the additional freight. It is further agreed that your company shall accept the corn shucks at $3.50 per ton that accumulate in shelling this corn. It is understood that we shall use our best efforts to make prompt delivery and that we will not sell any one else corn until this contract has been completed.
“ ‘Yours truly,
“ ‘[Signed] Vordenbaumen Lbr. Co., Ltd.,
“ ‘Per O. B. Hopkins, Sc.
(t ^Accdptod.
“■‘[Signed] Kelly Weber & Co., Ltd.,
“ ‘Per W. P. Weber, V. P.’
“That the agreement referred to in said document, and of which the contents of said document is a part,, was a verbal one, entered into on or about September 16, 1909, by the said Vordenbaumen Lumber Company, Limited, acting through the said O. B. Hopkins, its duly authorized representative, agent, and manager, and your petitioner, acting through its duly authorized representative, manager, and agent, and was, in effect' and substance, as follows, to wit: That the said Vordenbaumen Lumber Company, Limited, sold and agreed to deliver to your petitioner No. 3, and better, shelled corn, the number of bushels to be fixed as fixed in said document, at the price of 58 cents per bushel of 56 pounds, f. o. b. cars La Fayette, La., or 63.6 f. o. b. cars, Lake Charles, La., and, on the basis of weights of the Western Weighing Association, at La Fayette, La., your petitioner then and there agreeing to take said, corn 'and to pay therefor on delivery. The delivery to begin as soon as possible after the contract hereto attached and marked ‘Exhibit 2,’ was fulfilled, and that, if the said Vordenbaumen Lumber Company, Limited, should be unable to secure enough corn to fill the contract at La Fayette, Scott, Parks, St. Martinville, Cade, Sunset, Breaux Bridge, or any intermediate points, then the 1 cent extra per bushel should be allowed and paid for the corn at other points as an additional compensation for extra freight. Petitioner to take all the shucks' taken from the corn and pay for same at the price of $3.50 per ton. The said Vordenbaumen Lumber Company, Limited, to use its best efforts to make prompt delivery; and that it would not sell corn to any one else, until the quantity engaged was delivered, and delivery of said corn to be made before January 1, 1910.”
It thus appears that plaintiff, after setting up a written instrument, alleges that the agreement contained in it was part of a verbal contract,. and it then undertakes to set out the entire verbal contract, including the part contained in the instrument, and, alleging that it had been amended, by an extension of the time for the delivery of the corn to March 1, 1910, further alleges that defendant failed to deliver some 28,000 bushels of the corn, and claims, as the damages *293 thereby sustained, the difference between the contract price and the market price at Lake Charles at the time that the delivery should have been made, to which are added certain other items, of alleged overcharges, etc., making a total of $4,412.60, from which it admits that there is to be deducted $615.58, being the contract price of a ear load of corn received by it and not paid for, and (as admitted during the trial) the further sum of $160, being the aggregate amount of certain credits to which defendant is admitted to be entitled by reason of errors in its invoices.
Defendant filed an exception of no cause of action, which was overruled, and, "by way of answer and supplemental answer, set up several defenses (the one in the event the other, or others, should not be sustained) to wit: That the parties by whom the alleged contract is said to have been made were without authority to bind the respective corporations, plaintiff and defendant, and that said alleged contract was ultra vires of said corporations, and is void for want of a legal cause or consideration; that the instrument referred to in the petition as “Exhibit A” was intended as a memorandum of a previous oral agreement between the signers (Hopkins and Weber) to the effect that defendant would sell and deliver to plaintiff the total output of its shelling plant for the season; that the number of bushels, as stated in said memorandum, was intended, on the one hand, as an estimate of the probable output, and, on the other, as a limitation upon the quantity of corn that plaintiff might be compelled to accept; and that the total output was so sold and delivered; that plaintiff, admitting, as it does, that it failed to pay for part of the corn actually delivered, is in no position to claim damages for inexeeution of the contract by defendant; that it was part of said verbal contract that plaintiff should not compete with defendant by purchasing corn in the local market in which defendant was expected to obtain its supply, and that plaintiff violated said contract, in that respect, and thereby prevented defendant from ob- ■ taining said supply. ■
Opinion.
At the inception of the trial, defendant objected to the introduction of evidence in support of plaintiff’s claim, on the grounds, among others, that, it appearing from the petition that plaintiff was in default, for nonpayment of the price of corn aetualy delivered by defendant, it could not be heard for the purposes of said claim; that it should be compelled to elect whether it stands upon the alleged verbal contract or the written instrument ; that it cannot be allowed to prove, as the measure of its alleged damages, the difference between the contract, and the market, price at Lake Charles, or at any other place than La Eayette, which objection was referred to the merits, with the agreement that it should apply to all testimony thereafter to be offered. Under the ruling so made, plaintiff was allowed to introduce evidence as to the market price of corn at Lake Charles at the date of defendant’s alleged default, and appears to rely upon that evidence as fixing the quantum of the damages claimed, and testimony was heard in support of the allegations of defendant’s answer. The case was, however, decided in favor of defendant, on the ground, that, by judicially admitting that it owed defendant, under the contract, $615.58, for corn actually delivered, and $160, for which it had failed to give credit and for which it entered a remittitur during the trial, plaintiff conceded its own default and could not, therefore, be heard to claim damages for the alleged default of defendant. The question thus presented, in view of the facts with which it is involved, would require an extended consideration which we think may, profitably, be reserved for another occasion. The Yordenbaumen *295 Lumber Company, Limited, appears to have been incorporated with a capital stock of $20,000, “to conduct a mercantile business of any and all kinds, to deal in and carry a general stock of lumber, sash, doors, blinds, mouldings, builders’ supplies, hardware, agricultural and farm implements and machinery, etc., in the city of La Payette.” At the time of the transactions out of which this suit has arisen, the stock was held as follows :
E. H. Vordenbaumen $8,100; Mrs. C. M. Dees $7,200; E. G. Vordenbaumen $2,000; O. B. Hopkins, $2,200; J. 3. Davidson $300; Dr. Hopkins $100. E. H. Vordenbaumen, the president of the company and E. G. Vordenbaumen, director, lived in Shreveport, O. B. Hopkins, manager and director, J. 3. Davidson and Dr. Hopkins, directors, lived in La Payette.
The charter vests the corporate powers in a board of five directors, but, for the purposes of the ordinary business, those powers were exercised by O. B. Hopkins, in his capacity as manager, and, prior to the summer, or fall, of 1909, the business consisted of the buying and selling of such merchandise as might be considered included in the enumeration above quoted from the charter. On July 28, 1909, Mr. Hopkins, acting in the name of the company, though with no authority from the board of directors, and without the knowledge of its members, save, possibly, that of Mr. Davidson and Dr. Hopkins, sold 20,000 bushels of corn, for future delivery, to the present plaintiff, and, on September 16th, following, he sold 25,000 bushels more, under a similar written contract, and made the verbal contract for the sale of 100,000 bushels which is here sued on; neither of the Vordenbaumens nor Mrs. Dees, who, together, owned $17,300 of the $20,000, constituting the capital stock of the company, being informed of the radical departure so made from the line of business in which the corporation had been engaged, and Dr. Hopkins and Mr. Davidson only learning of it incidentally, as we infer, and after the fact. Mr. O. B. Hopkins testifies that it had been his custom to make written reports of the business monthly to the president, at Shreveport, but that from September 1, 1909, to January 1, 1910, he was so busy handling the corn called for by his contracts that he omitted to make those reports, so that, it was only about the date last mentioned that the president, visiting La Fayette, learned what was going on, and found that the company was then facing a loss, as he thought, of from $.5,000 to $10,000, and, to quote Ms testimony, he “put on a grin and bore it.” In other words," he was then willing that the company should go on and fill the contract here in question, at a loss, but neither Mrs. Dees nor E. G. Vordenbaumen, who own nearly one-half of the stock of the company, appear to have been informed of the corn speculation up to the time of the trial; and, subsequently, as we infer, when the defendant corporation found that it could not get the corn needed to make up the 100,000 bushels, all of the stockholders, or at least the five (out of six) constituting the board of directors, decided to defend the suit, and their counsel has set up the want of authority in the agent, and we are of opinion that the defense should be sustained.
[1, 2] We are fully aware of the fact that corporations such as those before the court not unfrequently conduct their affairs with but little regard for the obligations imposed upon them by their charters, those instruments being considered useful merely to protect the stockholders from liability beyond the amounts for which they have subscribed; but, being also mandates from the stockholders, whereby the measure of authority conferred upon the corporate officers is determined, they are also useful in protecting the stockholders from the unauthorized use, *297 or misuse, of the money so subscribed, and should serve to warn third persons against dealing with such officers, acting beyond the scope of their powers. Beyond that, plaintiff Is suing upon a very peculiar contract — a verbal contract, “of which” (the petition alleges) “the contents of said document” (referring to the written instrument annexed to the petition) “is a part.” If so much of the contract as is contained in “said document” is to be governed by the ordinary rules of evidence relating to contracts in writing, then all the testimony offered by plaintiff to prove its damages should have been excluded, since it relates to the value of corn at Lake Charles, though the corn called for by the “document” was to have been deliver-id at La Fayette. On the other hand, if the explicit stipulation, in writing, as to the place of delivery, and, hence, as to the market with reference to which the value of the com would, ordinarily, have to be determined, is not to be regarded, then, neither are the other stipulations in writing to be regarded, and the testimony offered on behalf of defendant to show that the fixing of the amount of corn to be delivered was merely estimative, and limitative as alleged in its answers, should be considered. In any event, since the written instrument is silent upon that subject, it was open to defendant to show that plaintiff agreed not to compete with it in the local market in the purchase of corn, and the testimony introduced by it on that subject (corroborated, to some extent, by the admission of Mr. Weber that he did agree that he would not compete with defendant in buying corn from the farmers), as we 'think, fairly sustains its contention that such was the agreement, and that plaintiff violated it by buying from dealers, within the prohibited territory, corn which defendant might otherwise have bought and with which it might have completed the deliveries called for'by the (written part of the) contract sued on. We may say, in conclusion, that we have not been able to find how plaintiff sustained the damage claimed, even supposing that to be the only question in the case, and that the Lake Charles market is the proper one by which to determine it, since it appears to us that the corn purchased by plaintiff, in Kansas City, after defendant’s alleged default, cost no more than would corn delivered at Lake Charles under the contract sued on.
Judgment affirmed.